UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:17 CR 00234 RLW ) |
| MOHAMMED ALMUTTAN, | ) ) |
| Defendant. | ) ) |

### GUILTY-PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

**1. PARTIES:**

The parties are Defendant MOHAMMED ALMUTTAN, represented by defense counsel, Justin K. Gelfand and Ian T. Murphy, and the United States of America, represented by the United States Attorney's Office for the Eastern District of Missouri (hereinafter USAO). This agreement does not, and is not intended to, bind any governmental office or agency other than the USAO. The Court is not a party to this agreement.

**2. GUILTY PLEA:**

Pursuant to Rules 11(c)(1)(A) and 11(c)(1)(B), Federal Rules of Criminal Procedure, in exchange for Defendant's voluntary plea of guilty to Count 1 of the Indictment, the Government agrees to dismiss Counts 2, 3, 4, 14 and 34 at the plea hearing and also agrees that no further federal prosecution will be brought in this District relative to Defendant's involvement in conspiring to sell and transport contraband cigarettes, to distribute and to possess with intent to distribute controlled substances and analogue controlled substances intended for human

consumption, and launder money between January 1, 2014 and May 24, 2017 of which the USAO is aware at this time.

The parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties is the result of negotiation and led, in part, to the guilty plea. The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a).

### 3. ELEMENTS:

#### a. Count 1

As to Count 1, Defendant admits to knowingly violating Title 18, United States Code, Section 371 (18 United States Code, Section 2342(a)), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

(Conspiracy to Sell Contraband Cigarettes)

- One, between January 1, 2014 and May 24, 2017, Defendant reached an agreement with at least one other person to sell contraband cigarettes;

- Two, Defendant voluntarily and intentionally joined the agreement;

- Three, at the time Defendant joined in the agreement, he knew its purpose; and

- Four, while the agreement was in effect, Defendant knowingly committed an overt act in furtherance of the agreement.

2

## 4. FACTS:

The parties agree that the facts in this case are as follows and that the USAO would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

Prior to 2015, brothers, Hisham Mutan (Hisham), Rami Almuttan (Rami), Saddam Mutan (Saddam), and Mohammed Almuttan (Defendant), purchased and began operating numerous gas stations and convenience stores throughout the greater St. Louis metropolitan area in the Eastern District of Missouri. These stores include Kenyes Market at 5477 North Kingshighway (Kenyes), Hazelwood Discount Cigarettes at 6950 North Hanley (Hazelwood Discount), Northway Market at 5590 North Florissant Blvd. (Northway), Mally's Supermarket at 7445 W. Florissant (Mally's), and the Phillips 66 gas station at 2800 North Florissant Blvd. (Phillips 66).

Cigarettes (in an amount exceeding 10,000) which bear no evidence of payment of applicable state or local cigarette taxes (stamps) where such cigarettes are found are "contraband" cigarettes. Cigarettes are commonly packaged 20 cigarettes to a pack, 10 packs to a carton; thus one carton contains 200 cigarettes, 50 cartons contain 10,000 cigarettes. During the time of the instant offense, the applicable state tax rate in Illinois was $19.80 per carton of cigarettes, in New Jersey it was $27.00, and in Missouri it was $1.70. Thus, there is a significant profit to be made in selling contraband Missouri-taxed cigarettes in the State of Illinois and the State of New Jersey simply by avoiding the state tax.

Defendant supervised the conspiracy to distribute contraband cigarettes. Defendant directed, and at times personally participated in, the purchase of bulk quantities of Missouri tax-stamped cigarettes from area Sam's Clubs on a regular basis. Purchases were made on Sam's

3

business accounts in the names of convenience stores owned or operated by the Almuttan brothers or their close associates. Those cigarettes were temporarily stored at locations controlled by Defendant, such as his residence, co-defendant Saddam's residence, or Mally's Supermarket. Contraband cigarette purchasers from Illinois and New Jersey, such as co-defendants Najeh Muhana, Fares Muhana, and Naser Abid, arranged with Defendant or Saddam for the cigarette purchases. Most often these contraband cigarette purchasers sent couriers to pick up the cigarettes in exchange for cash, but occasionally did so themselves. Initially, Defendant oversaw these transactions, but later delegated that responsibility to Saddam. Direct proceeds from these sales were, by and large, reinvested into further cigarette purchases.

During the time frame of Defendant's participation in the conspiracy, he was responsible for the intended sale of approximately 400,000 cartons of contraband cigarettes, in total, approximately 300,000 to the State of Illinois, 100,000 to the State of New Jersey, leading to an intended tax loss to Illinois of approximately $5,940,000 and an intended tax loss to New Jersey of approximately $2,700,000.

The parties agree that the intended tax loss is more than $3,500,000 and less than $9,500,000. The parties also agree that calculating the actual tax loss in this case is not possible and the parties therefore make no agreement as to the actual tax loss.

## 5. STATUTORY PENALTIES:

Defendant fully understands that the maximum possible penalty provided by law for the crime to which Defendant is pleading guilty is imprisonment of not more than 5 years, a fine of not more than $250,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than 3 years.

4

### 6. U.S. SENTENCING GUIDELINES: 2021 MANUAL:

Defendant understands that this offense is affected by the United States Sentencing Guidelines (U.S.S.G.) and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the U.S.S.G. Total Offense Level provisions that apply:

**a. Chapter 2 Offense Conduct:**

**(1) Base Offense Level:** The parties agree that the base offense level is 24 as found in Section 2E4.1(a)(2) cross referenced to Section 2T4.1(J) as the intended tax loss is more than $3,500,000 and less than $9,500,000, including all relevant conduct.

**b. Chapter 3 Adjustments**: The parties agree the following Chapter 3 Adjustments are applicable:

**(1) Aggravating Role:** The parties recommend that 4 levels should be added pursuant to U.S.S.G §3B1.1(a) because Defendant was an organizer or leader of a criminal activity that involved five or more participants.

**(2) Acceptance of Responsibility**: The parties recommend that two levels should be deducted pursuant to U.S.S.G §3E1.1(a), because Defendant has clearly demonstrated acceptance of responsibility. Further, the USAO, under the facts known at the present, will make a motion at the time of sentencing for an extra one level reduction based on Defendant's notification to the USAO of Defendant's intention to plead guilty. The parties agree that Defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the USAO receives new evidence of statements or

5

conduct by Defendant which it believes are inconsistent with Defendant's eligibility for this deduction, the USAO may decide not to file such motion without violating the plea agreement.

**c. Estimated Total Offense Level:** The parties estimate the Total Offense Level is 25.

**d. Criminal History:** The determination of Defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to Defendant's criminal history and the applicable category. Defendant's criminal history is known to Defendant and is substantially available in the Pretrial Services Report.

**e. Effect of the Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

## 7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:

**a. Appeal:** Defendant has been fully apprised by defense counsel of Defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea.

**(2) Sentencing Issues:** In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines analysis agreed to herein, and, after determining a Total Offense Level,

6

sentences Defendant within or below that range, then, as part of this agreement Defendant hereby waives all rights to appeal all sentencing issues. Similarly, the Government hereby waives all rights to appeal all sentencing issues, provided the Court accepts the plea and sentences Defendant within or above the range of the determined Total Offense Level.

**b. Habeas Corpus:** Defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c. Right to Records:** Defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8. OTHER:**

**a. Disclosures Required by the United States Probation Office:** Defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the USAO.

**b. Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** While nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against Defendant, the parties expressly agree that the count of conviction is not a crime involving moral turpitude, is not an

aggravated felony, and involves a conspiracy to commit an offense against the United States, not defraud the United States. Defendant's decision to enter into this guilty plea agreement is expressly predicated on the parties' joint agreement that the count of conviction is not a crime involving moral turpitude, and is not an aggravated felony. In the event United States immigration authorities and/or a court erroneously treat this conviction as such, Defendant has the right to withdraw his guilty plea.

**c. Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon Defendant and may impose special conditions related to the crime Defendant committed. These conditions will be restrictions on Defendant to which Defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require Defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. Defendant understands that parole has been abolished.

**d. Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $100, which Defendant agrees to pay at the time of sentencing. Money paid by Defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**e. Possibility of Detention:** Defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**f. Fines, Restitution, and Costs of Incarceration and Supervision:** The Court may impose a fine, costs of incarceration and costs of supervision. Defendant agrees that any fine imposed by the Court will be due and payable immediately.

The parties agree and jointly recommend that no restitution is due and that restitution is not mandatory in this case pursuant to the Mandatory Victims Restitution Act (18 U.S.C. § 3663A) because a determination of complex issues of fact relating to the amount of any victims' losses would complicate and prolong the sentencing process to such a degree that the burden outweighs the need to provide restitution. Here, determining actual tax loss amounts would complicate and prolong the sentencing process to such a degree that the need to provide restitution to state governments or any other alleged victim, if any is due, would be outweighed by its burden on the sentencing process.

Additionally, the parties agree and jointly recommend that no restitution be ordered in this case because of Defendant's agreement to forfeiture as outlined in the following paragraph and the substantial offsets in taxes paid to the State of Missouri and local governments. Defendant acknowledges this restitution agreement does not impact the amount of intended tax loss calculated and admitted to under Section 4 of this Plea Agreement.

**g. Forfeiture:** The defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities. Defendant specifically agrees to the forfeiture of the following: All items listed in the Bill of Particulars for Forfeiture of Property (Doc. #581) except for Items (a), (tt). The defendant agrees the Court may enter a consent preliminary order of forfeiture any time before sentencing, and such Order will become final as to the defendant when it is issued and will be part of the sentence. The

9

defendant agrees not to object to any administrative, civil, or criminal forfeiture brought against any assets subject to forfeiture. The defendant will execute any documents and take all steps needed to transfer title or ownership of said assets to the government and/or to rebut the claims of nominees and/or alleged third party owners. The defendant knowingly and intelligently waives all constitutional, statutory, and equitable challenges to any forfeiture carried out in accordance with this plea agreement, including but not limited to that defendant was not given adequate notice of forfeiture in the charging instrument.

The Government agrees that it will return to the defendant and that it will not pursue forfeiture of the following property that was seized as part of the investigation: The following items listed in the Bill of Particulars for Forfeiture of Property (Doc. #581): (a), (tt) (the "Returned Property"). The defendant releases and forever discharges the United States of America, the Internal Revenue Service, the United States Department of Homeland Security Investigations, the United States Marshals Service, and the departments, representatives, officers, agents, attorneys, and employees of the entities herein above named, of and from any and all civil liabilities, claims or causes of action whatsoever at law or in equity, whether now known or hereafter discovered, including without limitation all civil claims and causes of action arising out of the seizure of the Returned Property.

The defendant knowingly and voluntarily waives any right, title, and interest in all other items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees to abandon his interest in all seized items and further agrees that said items may be disposed of or destroyed by law enforcement officials in any

manner without further notice. By abandoning these items, the defendant waives any future rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest the disposition or destruction of the items that may exist under any policies or procedures of the seizing agency(ies).

## 9. ACKNOWLEDGMENT AND WAIVER OF DEFENDANT'S RIGHTS:

In pleading guilty, Defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the USAO to prove the elements of the offenses charged against Defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. Defendant further understands that by this guilty plea, Defendant expressly waives all the rights set forth in this paragraph.

Defendant fully understands that Defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. Defendant's counsel has explained these rights and the consequences of the waiver of these rights. Defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

Defendant is fully satisfied with the representation received from defense counsel. Defendant has reviewed the USAO's evidence and discussed the USAO's case and all possible

defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which Defendant has requested relative to the USAO's case and any defenses.

Defense counsel has advised Defendant of the possible immigration consequences resulting from the plea as set out in this plea agreement.

### 10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:

This document constitutes the entire agreement between Defendant and the USAO, and no other promises or inducements have been made, directly or indirectly, by any agent of the United States government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, Defendant states that no person has, directly or indirectly, threatened or coerced Defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

Defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. Defendant further acknowledges that this guilty plea is made of Defendant's own free will and that Defendant is, in fact, guilty.

### 11. CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if Defendant commits any crime, other than minor traffic offenses, violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The USAO may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported

by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12. LIMITED RIGHT TO WITHDRAW GUILTY PLEA:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, Defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the USAO agrees to dismiss or not to bring. Additionally, in the event United States immigration authorities and/or a court erroneously treat this conviction as a crime of moral turpitude or an aggravated felony, Defendant has the right to withdraw his guilty plea.

4/6/22
Date

JOHN MANTOVANI 50867MI for Mr. WARE
JOHN J. WARE, #40880MO
Assistant United States Attorney

4/6/2022
Date

MOHAMMED ALMUTTAN
Defendant

4/6/2022
Date

JUSTIN K. GELFAND
IAN T. MURPHY
Attorneys for Defendant