**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | No. 4:17-CR-234-RLW |
| **v.** ) | |
| ) | |
| **MOHAMMED ALMUTTAN,** ) | |
| ) | |
| **Defendant.** ) | |

**UNOPPOSED MOTION FOR BAIL PENDING APPEAL**

Defendant Mohammed Almuttan ("Almuttan"), by and through undersigned counsel, respectfully moves this Court to grant him release on bail pending appeal pursuant to 18 U.S.C. § 3143(b). Undersigned counsel has conferred with counsel for the United States and confirmed that the United States does not object to an order permitting Almuttan to remain on bail pending appeal.

**I.     Legal Standard**

A defendant, like Almuttan, whom this Court has determined poses no risk of flight or danger to the community, shall be released pending appeal where the question presented is a close one or "one that could go either way." *United States v. Powell*, 761 F.2d 1227, 1234 (8th Cir. 1985); *see also United States v. Affleck*, 765 F.2d 944, 952 (10th Cir. 1985). Almuttan's anticipated appeal presents numerous close questions. However, for the limited purpose of this motion, Almuttan submits that each of the following issues independently provides grounds for granting bail pending appeal:

1. Pursuant to the terms of his plea agreement, Almuttan is entitled to withdraw his guilty plea because this Court, at sentencing, erroneously determined Almuttan was responsible for the conduct alleged in Count 2 of the indictment despite the fact that this Court had already dismissed Count 2 at the time of Almuttan's plea and despite the fact that there was no evidence before this Court to support its findings; and

2. This Court's sentence was both procedurally improper and substantively unreasonable.

The standard for granting bail pending appeal—where, as here, there is no risk of flight and no danger to the community[1]—is whether the appeal presents a substantial question of law or fact that, if successful, is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed. *See* 18 U.S.C. § 3143(b)(1); *Powell*, 761 F.2d at 1234; *Affleck*, 765 F.2d at 953. A question is "substantial" for purposes of Section 3143(b)(1)(B) if "it is a close question or one that could go either way." *Powell,* 761 F.2d at 1233-34. Almuttan need not show he is likely to succeed on the merits. *See id.* at 1234 ("the defendant does not have to show that it is likely or probable that he or she will prevail on the issue on appeal"). Each question presented by Almuttan's anticipated appeal readily clears this low hurdle as each is a "substantial" question that could be decided either way and, if resolved in Almuttan's favor, is likely to result in reversal.

In a situation like this, where an appeal presents substantial and close questions, "the statute establishes *a right* to liberty that is not simply discretionary but mandatory[.]" *United States v. Abuhamra*, 389 F.3d 309, 319 (2d Cir. 2004) (emphasis added). This makes sense because a defendant whose conviction may be reversed should not be required to sit in prison while his appeal is considered—and the prejudice of denying bail pending appeal would be irreparable here because Almuttan would have served a substantial portion of his sentence by the time his appeal is decided. This Court, therefore, should grant Almuttan bail pending appeal.

---

[1] This Court has already correctly concluded Almuttan is neither a risk of flight nor a danger to the community. (*See* Docs. 118 and 126). Furthermore, that Almuttan has remained on bond during the pendency of this case before the district court for more than 5 years and is permitted to self-surrender following imposition of his sentence corroborates this Court's findings.

## II. Relevant Background

On May 24, 2017, Almuttan was charged in an indictment in Counts 1, 2, 3, 4, 14 and 34. (Doc. 1). On April 7, 2022, Almuttan pled guilty to Count 1. (Doc. 1947). At the plea hearing, the Government moved orally to dismiss Counts 2[2], 3, 4, 14 and 34. (*See* Doc. 1946). This Court dismissed each of those counts. (*See id.*). That same day, the Government also filed a written motion to dismiss Counts 2, 3, 4, 14 and 34 as to Almuttan. (Doc. 1958). This Court granted the Government's written motion and reiterated its dismissal of Counts 2, 3, 4, 14 and 34. (Doc. 1964).

On October 3, 2022, this Court held a sentencing hearing for Almuttan. (*See* Doc. 2291). At Almuttan's sentencing hearing, this Court stated that Almuttan was "one of the ringleaders, if not the mastermind" of synthetic drug trafficking operations. (Sent. Tr. at 8). This Court continued, "The contraband drugs, those were disseminated from some of your stores, and the countless people that have been affected by that we can never know. And not only did you instruct people to sell those drugs, you actually manufactured those drugs. You even had materials come from a foreign country to make those drugs on a farm that you owned, and through you and your brothers and the other co-conspirators, they were distributed." (*Id.*). This Court made these statements despite the fact that the Government had twice moved to dismiss Counts 2, 3, 4, 14 and 34, this Court had twice dismissed Counts 2, 3, 4, 14 and 34, and there was absolutely no evidence before this Court that could even arguably support that finding.

Instead, Almuttan only pleaded guilty to a conspiracy to sell cigarettes which did not bear evidence of payment of applicable state or local cigarette taxes. (*See* Doc. 1947). He did not plead guilty—and to this day maintains his innocence—to any synthetic drug trafficking operations,

---

[2] Count 2 charged Almuttan with a conspiracy to traffic synthetic controlled substances. (*See* Doc. 1).

3

there was no evidence before this Court that he participated in (let alone "masterminded") any such activity, and the Government presented no evidence at the sentencing hearing. Indeed, in the written plea agreement, the Government agreed Almuttan had only committed a crime that was not an aggravated felony or a crime involving moral turpitude. (*See id.*). At sentencing, this Court sentenced Almuttan to 48 months' imprisonment and, for the third time, reiterated its dismissal of Counts 2, 3, 4, 14 and 34 pursuant to the Government's oral motion at sentencing. (Doc. 2296).

On October 17, 2022, Almuttan timely filed his notice of appeal.

### III.   This Court Should Grant Bail Pending Appeal

Each of the following two issues provides sufficient grounds to grant this motion.

#### A.   Almuttan is Entitled to Withdraw His Guilty Plea

After a court imposes a sentence, a "plea may be set aside only on direct appeal or collateral attack." Fed. R. Crim. P. 11(e).

In the written plea agreement, the parties expressly agreed that Almuttan did not commit a crime involving moral turpitude or an aggravated felony, and that his criminal activity as set out in the plea agreement involved only a conspiracy to commit an offense against the United States— in particular, only the contraband cigarette conspiracy charged in Count 1. (*See* Doc. 1947). The parties agreed, and this Court accepted, that in the event United States immigration authorities and/or a court erroneously treat his conviction in a manner that could have adverse immigration consequences, Almuttan "has the right to withdraw his guilty plea." (*Id.*). This is expressly set out twice in the plea agreement, including in the section entitled, "Limited Right to Withdraw Guilty Plea." (*Id.*). Additionally, the plea agreement makes clear that Almuttan has a right to withdraw his guilty plea where, as here, this Court "rejects those portions of the plea agreement which deal with charges the USAO agrees to dismiss[.]" (*See id.*). Here, Almuttan's basis for withdrawing his

4

guilty plea did not occur until the sentencing hearing.

Neither the Government nor the defense anticipated that this Court would conclude that Almuttan was "one of the ringleaders, if not the mastermind" of alleged synthetic drug trafficking operations charged in Count 2 which had already been dismissed before sentencing. (Sent. Tr. at 8). Nor did the parties anticipate that this Court would state that Almuttan instructed people to sell drugs, manufactured drugs, or ordered materials from a foreign country—allegations for which there was absolutely no evidence before this Court. (*Id.*). Indeed, at the time this Court made these statements, Count 2 had already been dismissed twice, there was absolutely no evidence before this Court to support those conclusions, the parties deliberately entered into a plea agreement in which Almuttan did *not* plead guilty to Count 2 or make any factual admissions to any allegation regarding synthetic drugs, the parties expressly included language concerning Almuttan's right to withdraw his guilty plea in the event this Court concluded Almuttan was culpable for the conduct charged in Count 2, and this Court's consideration of those dismissed allegations was improper as a matter of law. As such, Almuttan is entitled to appeal his conviction and to withdraw his plea.

However, at this stage in the proceeding, this Court need not rule on this substantive issue. Instead, this Court need merely conclude that this issue is "substantial" in that—at a minimum— "it is a close question or one that could go either way." *Powell* 761 F.2d at 1233-34. Therefore, this Court should permit Almuttan to remain on bond pending appeal.

### B. This Court's Sentence Was Procedurally Improper and Substantively Unreasonable

It was procedurally improper and clearly erroneous for this Court to consider allegations for which there was no evidentiary basis and for which the related count had already been dismissed—and to do so in a way that did not give Almuttan notice of its consideration of those allegations, an opportunity to be heard on those allegations, or an opportunity to put on

5

countervailing evidence to rebut those allegations. *See, e.g., Gall v. United States*, 552 U.S. 38, 51 (2007) (appellate court "must first ensure that the district court committed no significant procedural error, such as…selecting a sentence based on clearly erroneous facts…").

Almuttan's sentence was also substantively unreasonable. When imposing any sentence where, as here, a defendant has filed a motion for a downward variance, a district court must "adequately explain[] the sentence and appropriately consider[] the section 3553(a) factors," making "precisely the kind of defendant-specific determinations that are within the special competence of sentencing courts." *See United States v. Cole*, 765 F.3d 884, 887 (8th Cir. 2014) (citing *United States v. Feemster*, 572 F.3d 455, 464 (8th Cir. 2009)). In this case, this Court did not expressly rule on Almuttan's motion for a downward variance, did not explain its consideration of each Section 3553(a) factor, and did not rule on the downward variance arguments set out in Almuttan's sentencing memorandum. (*See* Doc. 2263).

This Court's sentence was also substantively unreasonable because it was expressly predicated on facts alleged in Count 2 for which there was no evidentiary basis—let alone proof by a preponderance of the evidence. *See, e.g., United States v. Delgado-Hernandez*, 646 F.3d 562, 568 (8th Cir. 2011) ("A sentence is substantively unreasonable if the district court…gives significant weight to an improper or irrelevant factor") (quoting *United States v. Lozoya,* 623 F.3d 624, 626 (8th Cir. 2010)).

A district court in the Eighth Circuit has even held that it is appropriate to require proof *beyond a reasonable doubt* by the Government of facts that are used to enhance a sentence. *See United States v. Huerta-Rodriguez*, 355 F. Supp. 2d 1019, 1027 (D. Neb. 2005). On appeal, the Eighth Circuit upheld the district court's decision. *See United States v. Huerta-Rodriguez,* 158 F. App'x 754 (8th Cir. 2005). There, the district court explained:

6

> Whatever the constitutional limitations on the advisory sentencing scheme, the court finds that it can never be "reasonable" to base any significant increase in a defendant's sentence on facts that have not been proved beyond a reasonable doubt.
>
> In view of the foregoing, this court finds that it will continue to require that facts that enhance a sentence are properly pled in an indictment or information, and either admitted, or submitted to a jury (or to the court if the right to a trial by jury is waived) for determination by proof beyond a reasonable doubt. The court finds that although *Booker*'s Sixth Amendment holding may not require such a procedure, it is not precluded. It is up to this court to determine a reasonable sentence and the court will not rely on facts proved to a mere preponderance of evidence in order to increase a defendant's sentence to any significant degree. To the extent that the government intends to rely on the proof of any fact to enhance a defendant's sentence, that fact must be pled, by indictment or information, and either admitted or proved.

*Huerta-Rodriguez*, 355 F. Supp. 2d at 1028–29 (internal citations omitted).

This Court's consideration of conduct alleged in Count 2 in fashioning its sentence for Count 1 perfectly illustrates the extent to which this is unconstitutional and both procedurally and substantively improper: it "guts the role of the jury in preserving individual liberty and preventing oppression by the government," *United States v. Brown*, 892 F.3d 385, 408 (D.C. Cir. 2018) (Millett, J., concurring), because the facts at issue involve not just traditional "facts enhancing the crime of conviction, like the presence of a gun or the vulnerability of a victim. Rather they are facts comprising [a] different crime[]." *United States v. Pimental*, 367 F.Supp.2d 143, 153 (D. Mass. 2005).

This Court's findings concerning the unproved allegations in Count 2 also violated the Due Process Clause of the Fifth Amendment and the Sixth Amendment's guarantee of a jury trial. In *United States v. Watts*, 591 U.S. 148, 154 (1997), a divided Supreme Court held in a summary disposition that considering acquitted conduct at sentencing does not offend the Double Jeopardy Clause of the Fifth Amendment. But *Watts* has been misinterpreted to broadly apply to a larger set of circumstances. However, the Supreme Court has cautioned that *Watts* "presented a very narrow

question regarding the interaction of the [U.S. Sentencing] Guidelines with the Double Jeopardy Clause, and did not even have the benefit of full briefing or oral argument." *United States v. Booker*, 543 U.S. 220, 240 n.4. Thus, the *Watts* Court did not consider whether the Due Process Clause of the Fifth Amendment or the Sixth Amendment's jury-trial guarantee preclude the use of unproved conduct at sentencing that has no evidentiary basis and which has not been found by a jury.

The question before this Court—and ultimately the United States Court of Appeals for the Eighth Circuit—is far more problematic than the consideration of acquitted conduct at sentencing. In cases where acquitted conduct has been considered by sentencing courts, the argument—as flawed as it may be—is that a sentencing court can theoretically conclude that the Government proved the acquitted count by a preponderance of the evidence (arguably the standard for sentencing) but not beyond a reasonable doubt (the standard for a conviction at trial). But in this case, there was *no evidence* at all before this Court. Instead, this Court concluded that because Almuttan was *charged* with a crime—for which he was presumed innocent, pleaded not guilty, and maintains his innocence—he committed that crime despite there being literally no evidence before this Court to support that determination. This is a fundamental error requiring reversal.

Under these circumstances, Almuttan's anticipated appeal on this issue, at a minimum, "raises a substantial question of law or fact likely to result in...(i) reversal, [or] (ii) an order for a new trial." 18 U.S.C. §3143(b)(1)(B). This Court, therefore, should grant this motion for bail pending appeal.

### IV.     The United States Has No Objection to Bail Pending Appeal in This Case

The Government, by and through its counsel, does not object to an order granting Almuttan bail pending appeal.

8

## V. Conclusion

It would be a great injustice if Almuttan is required to serve time in a federal prison for a conviction that might reasonably be overturned on appeal. On the other hand, even if Almuttan does not ultimately prevail on appeal, the Government will not be prejudiced as Almuttan will simply be ordered to complete his sentence, in full, at a later date. Indeed, the Government has expressly represented that it does not object to bail pending appeal.

As Almuttan intends to establish in his appeal, he is entitled to withdraw his guilty plea or, at a minimum, a new sentencing hearing to correct procedural and substantive errors. But for the limited purpose of this motion, this Court should permit Almuttan to remain on bail pending appeal as he poses no risk of flight, no danger to the community, and because his appeal presents a substantial question of law or fact which, if successful, is likely to result in reversal on all counts on which imprisonment has been imposed. *See* 18 U.S.C. § 3143(b)(1); *Powell*, 761 F.2d at 1234; *Affleck*, 765 F.2d at 953

Respectfully submitted,

*/s/ Justin K. Gelfand*
JUSTIN K. GELFAND, #62265
IAN T. MURPHY, #68289
7700 Bonhomme Ave., Ste. 750
St. Louis, MO 63105
Telephone: 314.390.0234
Facsimile: 314.485.2264
justin@margulisgelfand.com
ian@margulisgelfand.com
*Counsel for Defendant*

**Certificate of Service**

I hereby certify that I filed the foregoing through the Court's CM/ECF system which will provide notice of filing to all counsel of record.

*/s/ Justin K. Gelfand*
JUSTIN K. GELFAND, #62265
IAN T. MURPHY, #68289
7700 Bonhomme Ave., Ste. 750
St. Louis, MO 63105
Telephone: 314.390.0234
Facsimile: 314.485.2264
justin@margulisgelfand.com
ian@margulisgelfand.com
*Counsel for Defendant*
