# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:17-CR-234 RLW |
| ) | |
| MOHAMMED ALMUTTAN, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This closed criminal case is before the Court on Defendant Mohammed Almuttan's Unopposed Motion for Bail Pending Appeal (ECF No. 2391), as supplemented (ECF No. 2432).

In the motion, Defendant Almuttan asks the Court to grant him release on bail pending appeal pursuant to 18 U.S.C. § 3143(b). On April 7, 2022, Almuttan pleaded guilty to one count of conspiracy to traffic in contraband cigarettes in violation of 18 U.S.C. § 371 (Count 1). Counts 2, 3, 4, 14, and 34 of the Indictment were dismissed on motion of the United States on April 8, 2022. (ECF No. 1964). On October 3, 2022, the Court sentenced Almuttan to a term of forty-eight months in prison, two years of supervised release, and a $50,000 fine. (Judgment in a Criminal Case, ECF No. 2296). The Court also ordered Almuttan to self-surrender for service of sentence at the institution designated by the Bureau of Prisons ("BOP") as notified by the United States Marshal.

Almuttan filed a Notice of Appeal on October 17, 2022 (ECF No. 2311). On October 24, 2022, the United States Marshal ordered Almuttan to report to the BOP's Marion Satellite Camp

on November 21, 2022.[1] (ECF No. 2350). Almuttan filed the instant motion on November 2, 2022.

In his motion, Almuttan argues he should be released on bail pending appeal because (1) he is entitled to withdraw his guilty plea pursuant to the terms of his Guilty Plea Agreement because the Court at sentencing erroneously determined he was responsible for conduct alleged in Count 2 of the indictment, which was already dismissed at the time of plea and for which there was no evidence before the Court to support its findings, and (2) the Court's sentence was both procedurally improper and substantively unreasonable.

**Legal Standard**

Title 18 of the United States Code, section 3143(b)(1) provides:

> **(b) Release or detention pending appeal by the defendant.—(1)** [T]he judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds—
>
> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released . . .; and
>
> (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—
>
> > (i) reversal,
> >
> > (ii) an order for a new trial,
> >
> > (iii) a sentence that does not include a term of imprisonment, or
> >
> > (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b)(1).

---

[1] The Court subsequently granted Almuttan's unopposed motion to extend his self-surrender date to the extent of 45 days; his current reporting date is January 5, 2023. (ECF No. 2441.)

In discussing § 3143(b)(1), the Eighth Circuit has stated that the "Bail Reform Act of 1984 made it much more difficult for a convicted criminal defendant to obtain his release pending appeal. The Act's intent 'was, bluntly, that fewer convicted persons remain at large while pursuing their appeals.'" United States v. Marshall, 78 F.3d 365, 366 (8th Cir. 1996) (quoting United States v. Powell, 761 F.2d 1227, 1231 (8th Cir. 1985) (en banc)).

The defendant has the burden of showing the merit of the appeal. Powell, 761 F.2d at 1232. To meet this burden, a defendant "must first show that the question presented by the appeal is substantial, in the sense that it is a close question or one that could go either way." Powell, id. at 1233-34. It is insufficient for a defendant to show the issue is fairly debatable, but a defendant is not required to show it is likely that he will prevail on the issue on appeal. Id. at 1234. If the defendant satisfies the first part of the test, "the defendant must then show that the substantial question he or she seeks to present is so integral to the merits of the conviction that it is more probable than not that reversal or a new trial will occur if the question is decided in the defendant's favor." Id.

**Discussion**

1. <u>Consideration of Dismissed Count as Relevant Conduct</u>

Almuttan's first argument is that the Court erred in discussing as relevant conduct at sentencing Almuttan's leadership role in the conspiracy to distribute controlled substances and analogues charged in dismissed Count 2.

Almuttan does not cite any illustrative case law in support of this argument. Nor does Almuttan quote the complete portion of the language in the Guilty Plea Agreement on which he relies for the argument that the Court's reference to a dismissed count entitles him to withdraw his guilty plea. Paragraph 12 of the Guilty Plea Agreement, titled "Limited Right to Withdraw Guilty Plea," provides:

3

> Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, Defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the USAO agrees to dismiss or not to bring. Additionally, in the event United States Immigration authorities and/or a court erroneously treat this conviction as a crime of moral turpitude or an aggravated felony, Defendant has the right to withdraw his guilty plea.

(ECF No. 1947 at 13, ¶ 12.)

The Court's statement at sentencing on which Almuttan's argument is based is set forth below. Defense counsel spoke in support of a sentence of probation, described Almuttan as a "remarkable human being," and discussed his background and virtues, including his work ethic, contributions to the community including operating convenience stores in areas that might otherwise be "food deserts," and providing assistance to those in need. In pronouncing sentence, the Court stated:

> [T]here's another side to this story.
>
> You were involved in two conspiracies in this matter and I have to consider all of that. And in the conspiracies you were one of the ringleaders, if not the master of the conspiracy. You recruited people to do the work on your behalf, you directed their activities and you realized the greatest share of the proceeds that you received.
>
> Now, I've received letters from people saying what a great citizen you are and things about what you do in the community, but they don't know the crimes that you've committed. They don't know the harm that you caused. I mean the harm that you caused in this is immeasurable. The contraband drugs, those were disseminated from some of your stores, and the countless people that have been affected by that we can never know. And not only did you instruct people to sell those drugs, you actually manufactured those drugs. You even had materials come from a foreign country to make those drugs on a farm that you owned, and through you and your brothers and the other co-conspirators, they were distributed.
>
> The cigarettes, you may think of it as a crime against no one because the taxes weren't paid, but that crime was committed across America, the contraband cigarettes. So there's another side to you that the public needs to know about.

(Sent Tr., ECF No. 2333 at 8:2-24).

4

This Court exercised its discretion in imposing sentence by considering the dismissed count, but by doing so it did not "reject[] those portions of the plea agreement which deal with charges the USAO agrees to dismiss or not to bring." (ECF No. 1947 at 13, ¶ 12.) This is demonstrated by the fact that the Court did not vary upward based on the dismissed count, but instead sentenced Almuttan to a term of imprisonment of 48 months, nine months below the low end of the advisory guidelines sentencing range for his sole count of conviction, Count 1.[2] Nor did the Court treat Almuttan's conviction on Count 1 as a crime of moral turpitude or an aggravated felony. As such, the argument that Almuttan is entitled to withdraw his guilty plea because the Court considered Almuttan's conduct as charged in dismissed Count 2 does not present a substantial question.

"A district court has wide discretion at sentencing as to the kind of information considered or its source." United States v. Pratt, 553 F.3d 1165, 1170 (8th Cir. 2009) (citation omitted). A court's inquiry at sentencing is "largely unlimited either as to the kind or information [it] may consider, or the source from which it may come." United States v. Atkins, 250 F.3d 1203, 1212-13 (8th Cir. 2001) (quoted case omitted); see also United States v. Watts, 519 U.S. 148, 154 (1997) (lower evidentiary standard at sentencing permits sentencing court to consider acquitted conduct); Witte v. United States, 515 U.S. 389, 399-401 (1995) (sentencing courts have traditionally considered wide range of information, including conduct that may be the subject of a subsequent criminal prosecution); Nichols v. United States, 511 U.S. 738, 747-48 (1994) (district courts have traditionally considered a defendant's prior criminal conduct even if the conduct did not result in a conviction). Any information may be considered, so long as it has sufficient indicia of reliability to support its probable accuracy. Watts, 519 U.S. at 157; Nichols, 511 U.S. at 748. "When finding sentencing facts, district court apply a preponderance

---

[2] The Guidelines called for a sentence of 57 to 60 months for Defendant Almuttan.

5

of the evidence standard." United States v. Clark, 932 F.3d 1064, 1066 (8th Cir. 2019) (cited case omitted).

The Court was within its discretion to consider Almuttan's conduct under dismissed Count 2 as relevant conduct that could be used in sentencing on the count of conviction. See United States v. Carter, 960 F.3d 1007, 1012 (8th Cir. 2020) (charges relating to additional victims were dismissed but could still be considered to enhance defendant's sentence); United States v. Sheahan, 31 F.3d 595, 599-600 (8th Cir. 1994) (citing United States v. Galloway, 976 F.2d 414, 425 (8th Cir. 1992) (en banc), and United States v. Streeter, 907 F.2d 781, 791 (8th Cir. 1990)); United States v. Karam, 37 F.3d 1280, 1285 (8th Cir. 1994) ("[W]e have explicitly held that a sentencing court may consider, as relevant conduct under U.S.S.G. § 1B1.3, the conduct charged in dismissed counts."); United States v. Jones, 994 F.2d 456, 459 (8th Cir. 1993) ('this court has previously held that conduct relevant to charges dismissed pursuant to a plea agreement may be considered by the district court at sentencing"); United States v. Williams, 879 F.2d 454, 457 (8th Cir. 1989).

The Eighth Circuit has interpreted the relevant conduct guideline, U.S.S.G. § 1B1.3, to allow a sentencing court to consider conduct relating to dismissed counts. "The broad language in § 1B1.3 'indicates the Sentencing Commission's intent to give courts the discretion to consider a broad range of conduct in making adjustments,' and so [the Eighth Circuit has] declined to infer a limitation precluding courts from considering conduct related to dismissed counts." Carter, 960 F.3d at 1012 (quoting Williams, 879 F.2d at 457).

Further, Almuttan's conduct in dismissed Count 2 was relevant to the count of conviction. "Relevant conduct is defined as all acts and omissions 'that were part of the *same course of conduct or common scheme or plan* as the offense of conviction.'" Sheahan, 31 F.3d at 599 (quoting U.S.S.G. § 1B1.3(a)(2)). This is a factual determination that is reviewed for

6

clear error. United States v. Balano, 8 F.3d 629, 630 (8th Cir. 1993). Under the Guidelines, "For two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purposes, or similar *modus operandi*." Sheahan, 31 F.3d at 599 (quoting U.S.S.G. § 1B1.3, comment n.9). Here, Almuttan's conduct charged under counts 1 and 2 involved "common accomplices," specifically, his brothers and co-defendants Rami Almuttan and Hisham Mutan. Convenience stores owned by Almuttan were a common factor in Counts 1 and 2 because they were used in carrying out the crimes charged in both counts. Counts 1 and 2 shared a "common purpose" of illegally enriching Almuttan. As such, there were multiple common factors and the Court could consider the conduct charged in Count 2 as relevant conduct to consider in sentencing Almuttan on Count 1.

Almuttan also contends there was no evidence to support the Court's statements concerning his conduct in the Count 2 conspiracy. The record shows that six of Almuttan's co-defendants, in addition to his brother Rami Almuttan, pleaded guilty to the Count 2 conspiracy charge pursuant to written guilty plea agreements and the Court sentenced each of them.[3] Each guilty plea agreement in the six co-defendants' cases stated that the parties agreed the facts were as set forth therein and that the United States would prove the facts beyond a reasonable doubt if the cases were to go to trial. The plea agreements included factual allegations concerning Mohammed Almuttan's conduct in connection with the synthetic drug conspiracy. The United States made varying factual assertions on the record at the guilty plea hearings in the six co-defendants' cases as to what the evidence would be if the cases had gone to trial, which included

---

[3] These were Defendants Saad Al Mallak, Hassan Abdelatif, Mahajir Naz, Talal Abuajaj, Basem Hamdan, and Zainal Saleh. See Guilty Plea Agreements of Defendants Al Mallak (ECF No. 2025); Abdelatif (ECF No. 2087); Naz (ECF No. 894); Abuajaj (ECF No. 2202); Hamdan (ECF No. 1937); and Saleh (ECF No. 1976).

facts concerning Mohammed Almuttan's role and actions in connection with the Count 2 conspiracy. Each co-defendant admitted under oath at his change of plea hearing that the Government's statements made on the record were true.

In addition, the Presentence Investigation Reports ("PSRs") in the six co-defendants' cases contained detailed factual allegations about the Count 2 conspiracy that include facts concerning Mohammed Almuttan's actions and role in the synthetic drug conspiracy.[4] These include facts derived from wiretaps of Almuttan's cell phone and evidence seized during searches of his residence and businesses. Each PSR states that the Government viewed Mohammed Almuttan and Rami Almuttan as the primary organizers of the synthetic drug scheme, as they recruited co-defendants to perform subordinate roles in the scheme, directed the activities of the others involved, and realized the greater percentage of profits generated by the criminal activity. No objections were filed to these portions of the PSRs by any of Almuttan's co-defendants or by the United States. See Fed. R. Crim. P. 32(i)(3)(A) ( sentencing court "may accept any undisputed portion of the presentence report as a finding of fact."); United States v. Cervantes, 420 F.3d 792, 796 (8th Cir. 2005).

This evidence has sufficient indicia of reliability to support its probable accuracy, see Watts, 519 U.S. at 157, Nichols, 511 U.S. at 748, and to establish Mohammed Almuttan's role in the Count 2 conspiracy by a preponderance of the evidence.

The Court concludes this argument does not present a substantial question.

---

[4]See Al Mallak Final PSR (ECF No. 2232 at 8-11); Abdelatif Final PSR (ECF No. 2243 at 9-12); Naz Final PSR (ECF No. 1001 at 10-13); Abuajaj Final PSR (ECF No. 2362 at 9-11); Hamdan Final PSR (ECF No. 2097 at 9-11); Saleh Final PSR (ECF No. 2147 at 9-11).

### 2. Allegations of Procedural and Substantive Error

Almuttan next argues it was procedurally erroneous for the Court to consider "allegations for which there was no evidentiary basis and for which the related count had already been dismissed," and not to give notice of its intent to consider the allegations or "an opportunity to put on countervailing evidence to rebut those allegations." (ECF No. 2391 at 5-6.)

It was not error for the Court to consider Almuttan's conduct under the dismissed Count 2 as relevant conduct for sentencing on the conviction count. U.S.S.G. § 1B1.3; Carter, 960 F.3d at 1012; Sheahan, 31 F.3d at 599. As stated above, there was sufficient reliable evidence in the record to support the allegations concerning Almuttan's conduct under Count 2 by a preponderance of the evidence. Almuttan cites no authority to support the proposition that the Court was required to notify him of its intention to consider the dismissed count as relevant conduct or allow him the opportunity to rebut it.

Almuttan also argues the sentence he received was substantively unreasonable because the Court did not adequately explain the sentence and appropriately consider the factors of 18 U.S.C. § 3553(a). Almuttan asserts that the Court "did not expressly rule on [his] motion for a downward variance, did not explain its consideration of each Section 3553(a) factor, and did not rule on the downward variance arguments set out in [his] sentencing memorandum." (ECF No. 2391 at 6.) At sentencing, Almuttan's attorney stated that his sentencing memorandum and motion for downward variance sought a sentence of probation. (Sent. Tr., ECF No. 2333 at 4:12-15.) The Court notes that Almuttan's sentencing memorandum was titled "Sentencing Memorandum and Motion for Downward Variance" but was not filed electronically using the motion filing event. (See ECF No. 2263.) As such, the docket record did not reflect a pending motion for downward departure, but rather only a sentencing memorandum.

9

Prior to pronouncing sentence, the Court stated that it listened to the in-court statements of both attorneys and Almuttan, and reviewed the PSR, Almuttan's sentencing memorandum, letters of support, and the Government's motion.[5] The Court also stated that it considered the facts of the case, Almuttan's criminal history, the death of Almuttan's father when he was ten years old, the fact that Almuttan is a father of five minor children, the advisory guidelines range, and the provisions of § 3553(a), in concluding that a sentence of 48 months, a downward departure, was sufficient but not greater than necessary to comply with the purposes set forth in § 3553(a). (ECF 2333, Sent. Tr. at 10:3-22.)

Courts are not required to "categorically rehearse" each of the § 3553(a) factors on the record as long as it is clear the court considered the factors. United States v. Hernandez, 518 F.3d 613, 616-17 (8th Cir. 2008). Here, the record shows the Court mentioned several specific factors and considered the nature and circumstances of the offense and Almuttan's history and characteristics in explaining the sentence. Some of these, such as Almuttan being the father of five children, having no criminal history, and having suffered the death of his father at a young age, were among the factors that Almuttan offered as supporting a downward variance to a sentence of probation.

Almuttan is correct that the Court did not explicitly rule on his motion for downward variance, although it stated it reviewed the sentencing memorandum—which contained the motion for downward variance—in addition to other documents and information before it that were relevant to determining Almuttan's sentence. The Court explained the defendant-specific

---

[5] With respect to the Government's motion, the Court also conducted an attorneys-only Rule 13.05 conference prior to the sentencing upon the joint request of defense counsel and the United States. During the conference, Almuttan's counsel did not refer to his motion for downward variance but made factual arguments in support of a reduced sentence. (Sealed Tr., ECF No. 2334 at 5:3-8:21.)

10

reasons for the sentence it imposed, and implicitly denied the motion for downward variance by declining to sentence Almuttan to probation as the motion sought.

At the conclusion of the sentencing hearing, the Court asked if either party had any objection to the Court's findings of fact, conclusions of law, or to the manner in which the sentence was pronounced. Almuttan's attorney said, "No objection, Your Honor." (ECF No. 2333, 15:8-12.) This would have been the time for Almuttan to object and point out that the Court had not explicitly ruled on his motion for downward variance. Cf. United States v. Sethi, 702 F.3d 1076, 1081 (8th Cir. 2013) (attorney objected where court did not address motion for downward variance at sentencing). There is no assertion here that the Court was unaware of its power to grant such a variance, had it deemed a sentence of probation appropriate under the circumstances of this case. If the Court committed procedural error by failing to explicitly rule on the sentencing memorandum's included motion for downward variance, Almuttan cites no authority to establish that it was significant procedural error where the Court adequately explained the sentence it imposed. See United States v. O'Connor, 567 F.3d 395, 397 (8th Cir. 2009) (stating that the Eighth Circuit reviews sentences in two steps: first, for significant procedural error, and if there is none, second, for substantive reasonableness).

Almuttan argues the sentence was also substantively unreasonable because it was predicated on facts alleged in Count 2 for which there was no evidentiary basis. As discussed above, there was a sufficient evidentiary basis for the Court to consider Almuttan's conduct in Count 2.

Finally, Almuttan argues that the Court's consideration of the conduct in the dismissed Count 2 violated the Fifth Amendment's Due Process Clause and the Sixth Amendment's guarantee of a jury trial. The Eighth Circuit has rejected similar arguments. See Galloway, 976 F.2d at 425 (holding that U.S.S.G. § 1B1.1 authorizing an increase in a defendant's sentencing

11

range based on evidence of other uncharged misconduct did not violate the defendant's due process or Sixth Amendment rights); Williams, 879 F.2d at 457 (holding district court did not err in increasing defendant's base offense level by two levels based on conduct in counts dismissed pursuant to a plea agreement). In United States v. Steffen, 818 F.3d 770, 772 (8th Cir. 2016), the Eighth Circuit held the sentencing court did not violate the defendant's Fifth or Sixth Amendment rights when it applied an advisory guidelines cross-reference for production of child pornography in imposing the statutory maximum sentence for receipt of child pornography, without submitting the issue of whether the defendant produced child pornography to the jury. This was so even though the facts on which the cross-reference was based were not admitted in the guilty plea, where the only effect of the findings as to the cross-reference was to influence the court's exercise of its discretion to impose a sentence within the statutory range. The Eighth Circuit stated that even if the facts warranting the cross-reference were elements of a separate crime, "that simply means the district court determined his *advisory* guidelines range based on uncharged relevant conduct, as § 1B1.3 of the guidelines requires and the Sixth Amendment permits." Id. at 772. Here, the Court considered the dismissed conduct in Count 2 as relevant conduct, in the exercise of its discretion to impose a sentence below the advisory guidelines range.

Upon review of the Almuttan's arguments, the Court finds that Almuttan has not met the burden of showing that his appeal raises a substantial question of law or fact likely to result in reversal or a new trial. 18 U.S.C. § 3143(b)(1)(B). Almuttan also does not show that the issues he raises are "so integral to the merits of the conviction that it is more probable than not that reversal or a new trial will occur if the question is decided in the defendant's favor." Powell, 761 F.2d at 1233-34.

The Court therefore finds that release on bail pending appeal is not warranted and will deny Almuttan's motion. Because the Court finds that Almuttan has not established the elements of § 3143(b)(1)(B), it "need not consider § 3143(b)(1)(A), which concerns whether [he] poses a danger to the community or presents a risk of flight." United States v. Beckham, 4:16-CR-300 RLW, 2018 WL 10159758, at *3 (E.D. Mo. Apr. 18, 2018) (quoted case omitted).

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Mohammed Almuttan's Unopposed Motion for Bail Pending Appeal (ECF No. 2391), as supplemented (ECF No. 2432), is **DENIED**.

*Ronnie L. White*
_____
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this 5th day of December, 2022.